UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID G. SCHWINGEL, individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 8712 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ELITE PROTECTION & SECURITY, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff David Schwingel, a Messianic Jew, worked as a security officer for Defendant Elite Protection and Security, Ltd. ("Elite"). Elite terminated him after an incident over a makeshift chair that he created and on which he placed a sign that stated "Men Only" and had additional language from the Bible concerning women's menstrual cycles. Schwingel then brought this *pro se* suit against Elite, alleging religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Because no reasonable factfinder could find that Elite terminated Schwingel on account of his religion and Schwingel withdrew any failure to accommodate claim, Elite's motion for summary judgment [83] is granted.

### BACKGROUND

**I.    Compliance with Local Rule 56.1**

As an initial matter, the Court must address Schwingel's compliance, or lack thereof, with Northern District of Illinois Local Rule 56.1, which provides detailed instructions as to how litigants should prepare their summary judgment motions and responses. This Court's summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit

a joint statement of undisputed facts. *See Sweatt v. Union Pacific R.R. Co.*, 796 F.3d. 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment case management procedures). But because Schwingel did not participate in the joint process despite Elite's efforts to obtain his compliance and to follow the Court's summary judgment procedures, the Court ordered the parties to follow Local Rule 56.1.

Pursuant to Local Rule 56.1, the party seeking summary judgment must submit a statement of undisputed material facts that support judgment in its favor as a matter of law. N.D. Ill. L.R. 56.1(a). The party opposing the motion must then submit a concise response to the movant's statement of material facts. N.D. Ill. L.R. 56.1(b)(3). That statement is to include a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" N.D. Ill. L.R. 56.1(b)(3)(B). The Court will deem admitted any fact in the moving party's statement that is supported by the record and not contested by the opposing party. N.D. Ill. L.R. 56.1(b)(3)(C); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Although "it is appropriate to apply [Local Rule 56.1] less strictly to *pro se* pleadings . . . . a *pro se* litigant is not completely excused from the requirements of Local Rule 56.1." *Lumpkins-Benford v. Allstate Ins. Co.*, 987 F. Supp. 2d 807, 812 (N.D. Ill. 2013); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Here, Elite filed a statement of uncontested material facts along with its motion for summary judgment, supported by evidentiary material in the record. Elite also served on Schwingel a Local Rule 56.2 Notice, explaining in detail the requirements of Local Rule 56.1 and Schwingel's obligation to respond to the statement, including the fact that failure to respond

would lead the Court to assume that Schwingel did not dispute the facts to which he did not respond. Schwingel failed to file any response to Elite's summary judgment motion, including to the statements of facts, according to the set briefing schedule. After reviewing Elite's motion, the Court ordered supplemental briefing on Schwingel's claim that Elite failed to accommodate his religion, which Schwingel marked as a claim he was pursuing in the form complaint he filed but did not elaborate further in the narrative portion of his amended complaint and which Elite had not addressed in its motion for summary judgment. *See* Doc. 93 (ordering supplemental briefing limited to failure to accommodate claim); Doc. 19 (Schwingel's amended complaint). Schwingel responded to the Court's order requesting supplemental briefing, although that response did not include any separate response to Elite's statements of fact. *See* Doc. 99. He did attach several exhibits and make various factual statements in his supplemental response, but none of these exhibits or statements is properly before the Court as they do not comply with Local Rule 56.1. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) ("District courts are entitled to expect strict compliance with Rule 56.1 and a court does not abuse its discretion when it opts to disregard facts presented in a manner that does [not] follow the Rule's instructions." (citations omitted) (internal quotation marks omitted); *Beard v. Don McCue Chevrolet, Inc.*, No. 09 C 4218, 2012 WL 2930121, at *5–6 (N.D. Ill. July 18, 2012) (collecting cases for proposition that facts that are presented in a brief and not in Local Rule 56.1 submissions are not properly before the Court). Schwingel also argues that the affidavits on which Elite relies are questionable or based on hearsay, but again, these arguments are not properly presented to the Court as required by Local Rule 56.1.[1]

---

[1] This does not mean, however, that the Court blindly accepts Elite's affidavits or statements without considering whether they would be admissible if presented at trial. Instead, the Court has included only those statements in the fact section that it finds are appropriately presented and admissible. This means

3

Apparently seeking to explain his failure to file a response as required on April 30, 2015, Schwingel attached an affidavit to his supplemental response indicating that he had moved in May 2015 and had medical issues beginning in February 2015. But Schwingel never moved for an extension of time nor did he keep his address updated, with the Court only learning of his change of address after its order setting a supplemental briefing schedule was returned as undeliverable. *See* Doc. 98. Moreover, Schwingel's affidavit (Ex. 3 to Doc. 97) is not signed nor is there any indication that it is made under the penalty of perjury, as required for affidavits to be considered for purposes of summary judgment. *See Sheikh v. Grant Regional Health Ctr.*, 769 F.3d 549, 551 (7th Cir. 2014) (a declaration may be considered for summary judgment purposes only if "it complies with the formalities required by 28 U.S.C. § 1746"); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 540 & n.5 (7th Cir. 2011) (district court properly disregarded documents that "failed to comply with the requirements of Rule 56(e) and 28 U.S.C. § 1746" that were "not signed, dated, or notarized"). Nor did Schwingel include a response to Elite's statements of fact or his own statement of additional facts in compliance with Local Rule 56.1 in connection with his supplemental response. Schwingel's affidavit and supplemental response do not provide an excuse for his failure to comply with Local Rule 56.1.

As a result, the facts in Elite's Local Rule 56.1 statements are deemed admitted to the extent supported by the record and properly admissible at the summary judgment stage. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

---

that to the extent there are any hearsay statements included in Elite's presentation, they have been considered only to the extent they fall within a hearsay exception.

## II.     Facts

Elite provides protection, investigation, and location security services in the Chicagoland area and around the world. This includes providing security cargo screening to DHL at DHL's facility in Franklin Park, IL, located near the south side of O'Hare International Airport (the "DHL Facility"). At the DHL Facility, Elite employees screen cargo freight that is then placed on commercial flights.

Schwingel worked for Elite as a security cargo screener at the DHL Facility from approximately June 1, 2010 through May 26, 2011. Schwingel described his job duties primarily as "screening packages or items that would go on passenger planes, checking for any detection of explosives that could cause a problem on a plane." Ex. C to L.R. 56.1 Stmt. 66:8–10. Schwingel worked the third shift from 10:00 p.m. to 6:00 a.m. Despite the fact that most employees in his position worked Tuesday through Saturday, Schwingel asked to work Monday through Friday. Elite accommodated Schwingel's request. Schwingel did not ask for any other accommodations due to his religious beliefs during his employment with Elite. He admits that he did not mention his beliefs to any supervisors at Elite, only that he requested that he have the Sabbath off.

Around May 14, 2011, DHL removed all chairs from the security screening stations at the DHL Facility. Schwingel and other security cargo screeners did not need chairs to perform their jobs. Of the belief that the chairs had been heavily stained as a result of women's menstruation, Schwingel viewed their removal as related to a Bible passage concerning the separation of sexes during a woman's menstrual cycle. Although Schwingel shared his views with a coworker, he did not discuss them with any Elite supervisors. He did ask a DHL supervisor for permission to use an existing chair, but the supervisor denied that request. Schwingel did not follow this request with any further requests for a chair to Elite supervisors nor did he ever request any

special seating accommodation from Elite. Instead, he fashioned his own chair from materials he found in the garbage outside of the DHL Facility. On the chair, he placed a cardboard sign on which he handwrote:

> Attention <u>Men Only</u>. No women are to sit here during the days of their monthly cycle. Whoever touches the bed of a women [sic] during her impurity or anything she sat on must wash his clothes, bath[e] in water, and be regarded as unclean until evening. Lv 15:21, 22, 23, 27. – Dave, 3rd Shift.

Ex. E to L.R. 56.1 Stmt.

On May 24, 2011, Melody Russell, another Elite employee working the third shift, tried to use Schwingel's chair. When Schwingel noticed, he pointed to the chair and indicated to her that she needed to read the sign. Russell responded that she would call Bill Snyder, Elite's president, to report discrimination. In a report Russell made to Snyder, Russell indicated that Schwingel told her that "women are defiled by God under the Mosaic Law" and that "all women are unnaturally clean because of menstruation and that [women] can never be trusted to honestly disclose whether or not [they] are menstruating." Ex. A to Ex. A to L.R. 56.1 Stmt. at EPS00103. Russell told Schwingel to leave her alone, but he persisted, returning later to inform her that he was smarter than she was with respect to biblical law. Russell complained to Snyder about Schwingel's sign and her interaction with him, indicating she felt harassed and was offended by his actions.

Elite's employee handbook provides that "[a]nyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action, up to and including termination of employment." Ex. C to Ex. A to L.R. 56.1 Stmt. at EPS00070. Elite's handbook also includes a code of ethics, which requires its employees to conduct themselves professionally at all times, "be faithful, diligent, dependable in discharging [their] duties," and "observe the precepts of truth, accuracy, prudence, without allowing personal feelings, prejudices, animosities, or

friendships to influence [their] judgments." *Id.* at EPS00063. Employees agree that violations of the code of ethics may lead to disciplinary measures, including permanent separation.

Elite investigated Russell's complaint in accordance with its policies and procedures, interviewing others employees on the third shift and meeting with Schwingel. Snyder and Philina Coats, an Elite Account Manager, attended the meeting with Schwingel. Eric Tindale, Elite's Director of Operations, was also present during parts of the meeting. Schwingel provided Snyder with a written statement. He admitted to making the cardboard sign and to the conversation with Russell. He also acknowledged that after his interaction with Russell, she asked him several times to leave her alone.

Elite determined from its investigation that Schwingel's conduct was disrupting the workplace and that he had harassed Russell because of her gender, making his conduct discriminatory. Concerned that such behavior would continue, distracting Elite employees and DHL or causing them to be targeted as well, Snyder, having conferred with Tindale, decided to terminate Schwingel. Snyder informed Schwingel of the decision at the end of their meeting. The termination was effective on or about May 26, 2011.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

7

(1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

**I.     Wrongful Termination**

Schwingel may prove his claim for wrongful termination for his religious beliefs under the direct or indirect method of proof. *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201 (7th Cir. 2013). Elite argues that Schwingel cannot meet his burden under either method. Schwingel did not respond to Elite's motion with respect to his wrongful termination claim, although his supplemental response generally argues that his termination was motivated by the sign Schwingel had created for his chair, which included Bible verses on it, as Snyder allegedly said that the sign would sink him.[2] Instead of considering the same pieces of evidence separately under each method, the Court will "collapse" the two tests "into one" and consider whether "a rational jury could conclude that the employer took [an] adverse action on account of" Schwingel's religion. *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring); *see also Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable

---

[2] Although the fact that Snyder said that the sign would sink Schwingel is not properly before the Court because Schwingel did not comply with Local Rule 56.1, even were the Court to consider Snyder's comment, the Court's analysis would not change, as discussed herein, for Snyder found Schwingel's posting of the sign to be discriminatory and harassing in violation of Elite's nondiscrimination policies.

8

jury could find prohibited discrimination."); *Weinberg v. William Blair & Co.*, No. 12-cv-09846, 2015 WL 5731637, at *4–5 (N.D. Ill. Sept. 30, 2015) (collapsing direct and indirect methods in finding that plaintiff's termination was not motivated by discriminatory animus based on plaintiff's religious beliefs).

Here, viewing the evidence as a whole and resolving all factual disputes in Schwingel's favor, a reasonable jury could not find prohibited discrimination. After chairs were removed from his worksite at DHL, Schwingel took it upon himself to create a chair and place a sign on it that stated "Men Only" and that "[n]o women are to sit here during the days of their monthly cycle." Ex. E to L.R. 56.1 Stmt. He also proceeded to engage a female co-worker when she confronted him about the sign, harassing her and creating an offensive environment for women in the DHL Facility. Schwingel did not keep his beliefs to himself but instead openly expressed them in violation of Elite's policies and procedures, including its non-discrimination policy and code of ethics. *See* Ex. C to Ex. A to L.R. 56.1 Stmt., EPS00030–31 ("It is against the policies of Elite . . . for an employee to harass another person because of the person's sex . . . . Actions, words, jokes, or comments based on such characteristics will not be tolerated. . . . Any person found to have unlawfully harassed another employee will be subject to appropriate disciplinary action, up to and including discharge."); *id.* at EPS00032 (all employees are to "conduct themselves in a professional and ethical manner"); *id.* at EPS00063 (security officers pledge to "observe the precepts of truth, accuracy, prudence, without allowing personal feelings, prejudices, animosities, or friendships to influence [their] judgments"); *id.* at EPS00070 ("Anyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action, up to and including termination of employment." ). These violations provided Elite with grounds to terminate Schwingel's employment. And although Scwhingel

9

may speculate that his termination was based on his religious beliefs, he has adduced no admissible evidence to call into question the fact that his termination was based on his violation of Elite's policies. *See Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2010 WL 522826, at *8–9 (S.D. Ohio Feb. 9, 2010) (finding that no reasonable inference could be drawn that company acted out of discriminatory religious animus when it interpreted its policy prohibiting use of abusive or threatening language about coworkers to prohibit statements by plaintiff that God would punish employees who taunted and harassed her). Schwingel has not shown that Elite applied its facially neutral policies differently to him or that it would have treated him differently if he belonged to a different religion and took the same actions. *See Ervington v. LTD Commodities, LLC*, 555 F. App'x 615, 618 (7th Cir. 2014) (employee, who claimed she was terminated because of her religion after she passed out pamphlets at Halloween with messages that negatively depicted Muslims and Catholics, could not succeed on her discrimination claim because she could not show that "the company would have applied its antiharassment policy differently if she belonged to another religion"); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604–05 (9th Cir. 2004) (plaintiff's religious discrimination claim failed where his statements against homosexuality violated the company's harassment policy, which was uniformly applied to all employees). Because Schwingel has not produced any evidence of discriminatory animus on account of his religious beliefs, summary judgment is granted for Elite on Schwingel's wrongful termination claim.

## II. Failure to Accommodate

Prior to the Supreme Court's recent decision in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, to establish a claim for failure to accommodate, a plaintiff had to show that "the observance or practice conflicting with an employment requirement is religious in nature, that [he] called the

religious observance or practice to [his] employer's attention, and that the religious observance or practice was the basis for [his] discharge or other discriminatory treatment." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997); *see also Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012). Once a plaintiff established a *prima facie* case, the burden shifted to the employer to make a reasonable accommodation or show that doing so would result in undue hardship. *Porter*, 700 F.3d at 951. But the Supreme Court revised the standard in *Abercrombie & Fitch*, holding that "[a] request for accommodation, or the employer's certainty that the [religious] practice exists . . . is not a necessary condition of liability" so that an employee "need only show that his need for an accommodation was a motivating factor in the employer's decision." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, --- U.S. ----, 135 S. Ct. 2028, 2032–33, 192 L. Ed. 2d 35 (2015). This reduces the *prima facie* case to two elements, with a plaintiff now only required to show that (1) his religious belief or practice conflicted with an employment requirement, and (2) the need for an accommodation of that religious belief was a motivating factor in the employer's adverse employment action.[3] *See E.E.O.C. v. Jetstream Ground Servs., Inc.*, --- F. Supp. 3d ----, 2015 WL 5697315, at *11 (D. Colo. Sept. 29, 2015).

In filing his amended complaint, Schwingel used the Court's form employment discrimination complaint and then attached his own narrative. *See* Doc. 19. As part of the form complaint, Schwingel checked the box indicating that Elite "failed to reasonably accommodate the plaintiff's religion." Doc. 19 at 4, ¶ 12(d). He also checked the box requesting that the Court "[d]irect the defendant to reasonably accommodate the plaintiff's religion." *Id.* at 5, ¶ 16(d). Although the narrative portion of his complaint did not include a separate claim for failure to

---

[3] Despite the fact that Elite filed its supplemental brief concerning the failure to accommodate claim on September 30, 2015, after *Abercrombie & Fitch* was decided (on June 1, 2015), Elite does not cite *Abercrombie & Fitch* and continues to argue that Schwingel had to inform Elite of his religious practices and his requested accommodation.

11

accommodate, the Court requested supplemental briefing on the issue, as there was no indication on the docket that the claim had been withdrawn.

After receiving further briefing on the issue, however, it is clear that Schwingel withdrew any failure to accommodate claim during his deposition. At his deposition, Schwingel stated that he should not have checked the boxes on the form complaint concerning a failure to accommodate, because Elite "did accommodate the Sabbath request" and he "made no request regarding the chair subject matter." Ex. C to L.R. Stmt. 227:21–228:6. These statements constitute disavowal and abandonment of any failure to accommodate claim that Schwingel asserted in his amended complaint. *See Long v. Kinkade*, No. 1:13-cv-01619-JMS-DKL, 2015 WL 5032353, at *14–15 (S.D. Ind. Aug. 25, 2015) (*pro se* plaintiff withdrew any claim based on seizure of personal property when he testified at his deposition that he was not seeking compensation for seizure of that property, even where he submitted an errata sheet indicating he did not know he could request such relief under § 1983); *Todd v. Lake County Sheriff's Dep't*, No. 2:08-CV-314-JTM-PRC, 2013 WL 5570189, at *4 (N.D. Ind. Oct. 9, 2013) (plaintiff's statement in deposition that had no problem with defendant outside of a false arrest claim was notice that other claims were no longer live, and although it would have been prudent to voluntarily dismiss those other claims, the statement could be construed as abandonment of the claims); *Darden v. Ingalls Mem'l Hosp.*, No. 10 C 4225, 2012 WL 965084, at *4 n.2 (N.D. Ill. Mar. 21, 2012) (granting summary judgment for defendant on claims that *pro se* plaintiff disavowed during deposition); *Powers v. Snyder*, No. 02-1372, 2009 WL 856160, at *5–6 (C.D. Ill. Mar. 26, 2009) (*pro se* plaintiff's statement in deposition that defendant "probably should be dismissed" constituted abandonment of claim against defendant). And although Schwingel's response to Elite's supplemental brief suggests that he may now be seeking to pursue a failure to

12

accommodate claim, he cannot make such a substantive change to his deposition testimony. *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (Rule 30(e) does not allow for post-deposition changes that contradict the deponent's testimony, stating that "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not'").

Moreover, a claim for failure to accommodate with respect to the seating issue would fail. Elite was not required to accommodate Schwingel's religion by permitting him to use a special chair and sign offensive to other employees. *See Ervington*, 555 F. App'x at 618 (failure to accommodate religion claim failed because company was not required to accommodate plaintiff's religion by allowing her to proselytize and distribute pamphlets that other employees found offensive); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1021 (4th Cir. 1996) (employer not required to accommodate employee's request to proselytize, noting that "where an employee contends that she has a religious need to impose personally and directly on fellow employees, invading their privacy and criticizing their personal lives, the employer is placed between a rock and a hard place"). Thus, the Court grants summary judgment for Elite on this claim.

## CONCLUSION

For the foregoing reasons, Elite's motion for summary judgment [83] is granted. Judgment is entered for Elite on Schwingel's wrongful termination and failure to accommodate claims. This case is terminated.

Schwingel need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Motions for reconsideration serve a limited purpose and are only appropriate to bring to the Court's attention a manifest error of law or fact or newly discovered evidence.

13

*Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A motion for reconsideration "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted); *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (a Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995))).

However, if Schwingel wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Finally, if Schwingel wishes to appeal this Court's decision, he must file a notice of appeal as required by Rule 3 with the district clerk within 30 days of the entry of this judgment. *See* Fed. R. App. P. 4(a)(1)(A).

Dated: December 2, 2015

_____
SARA L. ELLIS
United States District Judge